**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

ANTHONY MAZZARINI, individually and on behalf of all others similarly situated,

Plaintiff,

v.

BLACKBURN'S PHYSICIANS PHARMACY INC.,

Defendant.

CIVIL ACTION NO. 2:26-cv-01659

**COMPLAINT**

CLASS ACTION

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiff Anthony Mazzarini ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint and alleges the following against Defendant Blackburn's Physicians Pharmacy Inc. ("Blackburn's" or "Defendant"), based upon personal knowledge with respect to Plaintiff and upon information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters:

## NATURE OF THE ACTION

1. This class action arises out of a cyberattack and data breach (the "Data Breach") involving Blackburn's, which collected and stored certain personally identifiable information ("PII") and private health information ("PHI") of the Plaintiff and Class Members, all of whom had PII and/or PHI on Blackburn's servers. Once it was entrusted with safeguarding Class Members' PII, PHI and other sensitive data, Blackburn's assumed a non-delegable duty to ensure that this information was reasonably kept safe from the foreseeable event of a data security incident. Blackburn's breached that duty.

2. On August 3, 2026, the ransomware group Anubis reported having exfiltrated PII and PHI from Blackburn's servers.

3. Blackburn's failed to comply with industry standards to protect information systems that contain PII and PHI. Plaintiff seeks, among other things, orders requiring Blackburn's to fully and accurately disclose the nature of the information that has been compromised and to adopt sufficient security practices and safeguards to prevent incidents like the disclosure (the "Data Breach") in the future.

4. As a large healthcare business, Blackburn's knowingly obtained sensitive PII and PHI and had a resulting duty to securely maintain that information in confidence. Plaintiff and Class Members would not have provided their PII and PHI to Blackburn's if they had known that Blackburn's would not ensure that it used adequate security measures.

5. Plaintiff seeks to remedy these harms individually and on behalf of all other similarly situated individuals whose PII and/or PHI were exposed in the Data Breach. Plaintiff seeks remedies including compensation for time spent responding to the Data Breach and other types of harm, free credit monitoring and identity theft insurance, and injunctive relief including substantial improvements to Blackburn's data security policies and practices

## PARTIES

6. Plaintiff Anthony Mazzarini is an adult individual and citizen of Pennsylvania. He resides in Pittsburgh, Pennsylvania. He is currently a Blackburn's customer.

7. Defendant Blackburn's Physicians Pharmacy Inc. is a Pennsylvania corporation with a registered address of 301 Corbet St., Tarentum, Pennsylvania 15084.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332(d)(2) because (a) there are 100 or more Class Members, (b) at least one Class

Member is a citizen of a state that is diverse from Defendants' citizenship, and (c) the aggregate matter in controversy exceeds $5,000,000, exclusive of interests and costs.

9. This Court has general personal jurisdiction over the Blackburn's because Blackburn's is registered to do business, and maintains its principal place of business, in Tarentum, Pennsylvania.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Blackburn's is headquartered in this District, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## FACTUAL ALLEGATIONS

### The Data Breach

11. Blackburn's describes itself as "Your Premier Provider of Medical Equipment, Supplies & Services."[1]

12. Blackburn's offerings include "standard and complex rehab technology, respiratory, advanced wound care, medical supplies, durable medical equipment, home accessibility [and] pharmacy services."[2]

13. Due to the nature of the services it provides, Blackburn's acquires and stores PII and PHI electronically. Blackburn's was therefore required to ensure that PII and PHI were not disclosed or disseminated to unauthorized third parties without Plaintiff's and Class Members' express written consent.

[1] "Blackburn's," available at https://www.blackburnsmed.com/ (last visited Aug. 5, 2026).

[2] "Comprehensive Care," available at https://www.blackburnsmed.com/our-services (last visited Aug. 5, 2026).

14. On August 3, 2026, the ransomware group Anubis reported having exfiltrated PII and PHI from Blackburn's servers.

15. Through this lawsuit, Plaintiff aims to understand the full extent of the Data Breach, Blackburn's actions in response to the breach and any measures it has taken to secure Plaintiff's PII and PHI, obtain relief that redresses the harm to Plaintiff's and Class Members' interests, and ensure that Blackburn's has proper measures in place to prevent similar incidents from occurring in the future.

**Blackburn's Security Representations**

16. Blackburn's website includes a copy of its Privacy Policy.[3] That Policy claims that Blackburn's "believes that strong electronic privacy is crucial," that Blackburn's "will not release your personal data to anyone else without your consent," and that "[f]inancial information that is collected is used only to bill the user for products and services, but is never released to anyone without a 'need to know,' for any reason."[4]

17. Blackburn's also claims to maintain a "Corporate HIPAA Privacy and Security Program – Assuring customers of Protected Health Information."[5]

**The Healthcare Sector is a Primary Target for Data Breaches**

18. Blackburn's was on notice that companies in the healthcare industry are susceptible targets for data breaches.

---

[3] "Privacy Policy," available at https://www.blackburnsmed.com/privacy-policy (last accessed Aug. 5, 2026).

[4] *Id.*

[5] "About Us," available at https://www.blackburnsmed.com/about-us (last accessed Aug. 5, 2026).

19. Blackburn's was also on notice that the Federal Bureau of Investigation has been concerned about data security in the healthcare industry. On April 8, 2014, the FBI's Cyber Division issued a Private Industry Notification to companies within the healthcare sector, stating that "the health care industry is not technically prepared to combat against cyber criminals' basic cyber intrusion tactics, techniques and procedures (TTPs), much less against more advanced persistent threats (APTs)" and pointed out that "[t]he biggest vulnerability was the perception of IT healthcare professionals' beliefs that their current perimeter defenses and compliance strategies were working when clearly the data states otherwise." The same warning specifically noted that "[t]he FBI has observed malicious actors targeting healthcare-related systems, perhaps for the purpose of obtaining Protected Health Information (PHI) and/or PII."[6]

20. The number of reported North American data breaches increased by over 50 percent in 2021, from 1,080 in 2020[7], to 1,638 in 2021.[8] As a recent report reflects, "[h]ealthcare has increasingly become a target of run-of-the-mill hacking attacks and the more impactful ransomware campaigns."[9]

---

[6] Health Care Systems and Medical Devices at Risk for Increased Cyber Intrusions for Financial Gain (Apr. 8, 2014), FBI Cyber Division Private Industry Notification (available at https://info.publicintelligence.net/FBI-HealthCareCyberIntrusions.pdf) (last visited Aug. 5, 2026).

[7] See Verizon 2021 Data Breach Investigations Report, at 97, https://www.verizon.com/ business/resources/reports/2021-data-breach-investigations-report.pdf (last visited Aug. 5, 2026).

[8] See Verizon 2022 Data Breach Investigations Report, at 83 (available at https://www.verizon.com/ business/resources/reports/2022/dbir/2022-data-breach-investigations-report-dbir.pdf) (last visited Aug. 5, 2026).

[9] *Id*. at 62.

21. At the end of 2018, the healthcare sector ranked second in the number of data breaches among measured sectors, and had the highest rate of exposure for each breach.[10] Indeed, when compromised, healthcare related data is among the most sensitive and personally consequential. A report focusing on healthcare breaches found that the "average total cost to resolve an identity theft-related incident . . . came to about $20,000," and that the victims were often forced to pay out-of-pocket costs for healthcare they did not receive in order to restore coverage.[11] Almost 50 percent of the victims lost their healthcare coverage as a result of the incident, while nearly 30 percent said their insurance premiums went up after the event. Forty percent of the customers were never able to resolve their identity theft at all. Data breaches and identity theft have a crippling effect on individuals and detrimentally impact the economy.[12]

22. Healthcare-related breaches have persisted because criminals see electronic patient data as a valuable asset. According to the 2019 HIMSS Cybersecurity Survey, 82 percent of participating hospital information security leaders reported having a significant security incident in the previous 12 months, with a majority of these known incidents being caused by "bad actors" such as cybercriminals.[13] "Hospitals have emerged as a primary target because they sit on a gold mine of sensitive personally identifiable information for thousands of patients at any given time. From social security and insurance policies, to next of kin and credit cards, no other

---

[10] 2018 End-of-Year Data Breach Report, Identity Theft Resource Center (available at https://www.idtheftcenter.org/2018-data-breaches) (last visited Aug. 5, 2026).

[11] Elinor Mills, Study: Medical identity theft is costly for victims, CNET (March 3, 2010) (available at https://www.cnet.com/news/study-medical-identity-theft-is-costly-for-victims/) (last visited Aug. 5, 2026).

[12] *Id.*

[13] 2019 HIMSS Cybersecurity Survey (available at https://www.himss.org/ sites/hde/files/d7/u132196/2019_HIMSS_Cybersecurity_Survey_Final_Report. pdf) (last visited Aug. 5, 2026).

organization, including credit bureaus, have so much monetizable information stored in their data centers."[14]

23. The American Medical Association ("AMA") has also warned healthcare companies about the importance of protecting their patients' confidential information:

> Cybersecurity is not just a technical issue; it's a patient safety issue. AMA research has revealed that 83% of physicians work in a practice that has experienced some kind of cyberattack. Unfortunately, practices are learning that cyberattacks not only threaten the privacy and security of patients' health and financial information, but also patient access to care.[15]

24. As a major healthcare services provider, Blackburn's knew, or should have known, the importance of safeguarding Plaintiff's and Class Members' PII and PHI entrusted to them and of the foreseeable consequences if that data was disclosed. This includes the significant costs that would be imposed on Plaintiff and Class Members by virtue of a breach. Blackburn's failed, however, to take adequate cybersecurity measures to prevent the Data Breach.

**Blackburn's Stores Plaintiff's and Class Members' PII and PHI**

25. Blackburn's obtained and stored a massive amount of PII and PHI. As a condition of engaging in health care services, Blackburn's required that customers entrust it with highly confidential PII and PHI.

26. By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' PII and PHI, Blackburn's assumed legal and equitable duties and knew or should have

---

[14] Inside Digital Health, How to Safeguard Hospital Data from Email Spoofing Attacks, Apr. 4, 2019 (available at https://www.idigitalhealth.com/news/how-to-safeguard-hospital-data-from-email-spoofing-attacks) (last visited Aug. 5, 2026).

[15] Andis Robeznieks, Cybersecurity: Ransomware attacks shut down clinics, hospitals, Am. Med. Ass'n (Oct. 4, 2019) (available at https://www.ama-assn.org/practice-management/sustainability/cybersecurity-ransomware-attacks-shut-down-clinics-hospitals) (last visited Aug. 5, 2026).

known that they were responsible for protecting Plaintiff's and Class Members' PII and PHI from disclosure.

27. Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their PII and PHI, and relied on Blackburn's to keep this information confidential and securely maintained, and to make only authorized disclosures of this information.

**PII and PHI are Valuable and Subject to Unauthorized Disclosure**

28. Blackburn's was aware that the PII and PHI it collected is highly sensitive and of significant value to those who would use it for wrongful purposes.

29. PII and PHI are valuable commodities to identity thieves. As the FTC recognizes, identity thieves can use this information to commit an array of crimes including identity theft, and medical and financial fraud.[16] Indeed, a robust illegal market exists in which criminals openly post stolen PII and PHI on multiple underground websites, commonly referred to as the "dark web." PHI can sell for as much as $363 on the dark web, according to the Infosec Institute.[17] Moreover, "fullz" packages, which include "extra information about [a] legitimate credit card owner in case" a scammer's "bona fides are challenged when they attempt to use the credit card" are also offered on the dark web.[18]

[16] Federal Trade Commission, What To Know About Identity Theft (available at https://consumer.ftc.gov/articles/what-know-about-identity-theft) (last visited Aug. 5, 2026).

[17] Center for Internet Security, Data Breaches: In the Healthcare Sector (available at https://www.cisecurity.org/blog/data-breaches-in-the-healthcare-sector/) (last visited Aug. 5, 2026).

[18] Stolen PII & Ramifications: Identity Theft and Fraud on the Dark Web, Armor (Apr. 3, 2018), https://res.armor.com/resources/blog/stolen-pii-ramifications-identity-theft-fraud- dark-web/ (last visited Aug. 5, 2026).

30. PHI is particularly valuable because criminals can use it to target victims with frauds and swindles that take advantage of the victim's medical conditions or victim settlements. It can be used to create fake insurance claims, allowing for the purchase and resale of medical equipment, or gain access to prescriptions for illegal use or resale.

31. Medical identity theft can result in inaccuracies in medical records and costly false claims. It can also have life-threatening consequences. If a victim's PHI is mixed with other records, it can lead to misdiagnosis or mistreatment. "Medical identity theft is a growing and dangerous crime that leaves its victims with little to no recourse for recovery," reported Pam Dixon, executive director of World Privacy Forum. "Victims often experience financial repercussions and worse yet, they frequently discover erroneous information has been added to their personal medical files due to the thief's activities."[19]

32. The ramifications of Blackburn's failure to keep Plaintiff's and Class Members' PII and PHI secure are long-lasting and severe. Once PII and PHI are stolen, fraudulent use of that information and damage to victims may continue for years. Fraudulent activity might not show up for months or even years thereafter.

33. Further, criminals often trade stolen PII and PHI for years following a breach. Cybercriminals can post stolen PII and PHI on the internet, thereby making such information publicly available.

34. Approximately 21% of victims do not realize their identity has been compromised until more than two years after it happens. [20] This gives thieves ample time to seek multiple

[19] Michael Ollove, The Rise of Medical Identity Theft in Healthcare, Kaiser Health News (Feb. 7, 2014) (available at https://khn.org/news/rise-of-indentity-theft/) (last visited Aug. 5, 2026).

[20] See Medical ID Theft Checklist (available at https://www.identityforce.com/blog/medical-id-theft-checklist-2) (last visited Aug. 5, 2026).

treatments under the victim's name. Forty percent of consumers found out they were a victim of medical identity theft only when they received collection letters from creditors for expenses that were incurred in their names.[21]

35. Blackburn's knew, or should have known, the importance of safeguarding PII and PHI entrusted to them and of the foreseeable consequences if their data security systems were breached. This includes the significant costs that would be imposed on Plaintiff and Class Members because of a breach. Blackburn's failed, however, to take adequate cybersecurity measures to prevent the Data Breach from occurring.

**The Data Breach Exposed Plaintiff and Class Members to Identity Theft and Out-of-Pocket Losses**

36. Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of their rights. They are incurring and will continue to incur such damages in addition to any fraudulent use of their PII and PHI.

37. Despite all the publicly available knowledge of known and foreseeable consequences of the disclosure of PII and PHI, Blackburn's policies and practices with respect to maintaining the security of Plaintiff's and Class Members' PII and PHI were reckless, or at the very least, negligent.

38. In virtually all contexts, the expenditure of time has consistently been recognized as compensable, and for many people, it is the basis on which they are compensated. Plaintiff and Class Members should be compensated for the time they have expended because of Blackburn's misfeasance.

[21] Experian, The Potential Damages and Consequences of Medical Identity Theft and Healthcare Data Breaches (available at https://www.experian.com/assets/data-breach/white-papers/consequences-medical-id-theft-healthcare.pdf) (last visited Aug. 5, 2026).

39. Once PII and PHI are stolen, fraudulent use of that information and damage to victims may continue for years. Consumer victims of data breaches are more likely to become victims of identity fraud.[22]

40. As a result of the wide variety of injuries that can be traced to the Data Breach, Plaintiff and Class Members have and will continue to suffer financial loss and other actual harm for which they are entitled to damages, including, but not limited to, the following:

a. invasion of privacy;

b. theft of their PII and PHI;

c. lost or diminished value of their PII and PHI;

d. lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach;

e. loss of the benefit of their bargain;

f. lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach;

g. statutory damages;

h. nominal damages; and

i. the continued and certainly increased risk to their PII and PHI, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Blackburn's possession and is subject to further unauthorized disclosures so long as Blackburn's fails to undertake appropriate and adequate measures to protect the PII and PHI.

22 2025 LexisNexis True Cost of Fraud Study, https://risk.lexisnexis.com/insights-resources/research/us-ca-true-cost-of-fraud-study (last visited Aug. 5, 2026).

**Blackburn's Lax Security Violates HIPAA**

41. Blackburn's had a non-delegable duty to ensure that all PHI it collected and stored were secure.

42. Blackburn's is bound by HIPAA (*see* 45 C.F.R. § 160.102) and, as a result, is required to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

43. These rules establish national standards for the protection of patient information, including protected health information, defined as "individually identifiable health information" which either "identifies the individual" or where there is a "reasonable basis to believe the information can be used to identify the individual," that is held or transmitted by a healthcare provider. See 45 C.F.R. § 160.103.

44. HIPAA limits the permissible uses of "protected health information" and prohibits unauthorized disclosures of "protected health information."

45. HIPAA requires that Blackburn's implement appropriate safeguards for this information.

46. Despite these requirements, Blackburn's failed to comply with its duties under HIPAA and their own Privacy Practices. In particular, Blackburn's failed to:

a. maintain an adequate data security system to reduce the risk of data breaches and cyber-attacks;

b. adequately protect Plaintiff's and Class Members' PHI;

c. ensure the confidentiality and integrity of electronic PHI created, received, maintained, or transmitted, in violation of 45 C.F.R. § 164.306(a)(1);

d. implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights, in violation of 45 C.F.R. § 164.312(a)(1);

e. implement adequate policies and procedures to prevent, detect, contain, and correct security violations, in violation of 45 C.F.R. § 164.308(a)(1)(i);

f. implement adequate procedures to review records of information system activity regularly, such as audit logs, access reports, and security incident tracking reports, in violation of 45 C.F.R. § 164.308(a)(1)(ii)(D);

g. protect against reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information, in violation of 45 C.F.R. § 164.306(a)(3);

h. ensure compliance with the electronic PHI security standard rules by their workforce, in violation of 45 C.F.R. § 164.306(a)(4); and/or

i. train all members of their workforce effectively on the policies and procedures with respect to PHI as necessary and appropriate for the members of their workforce to carry out their responsibilities and to maintain security of PHI, in violation of 45 C.F.R. § 164.530(b).

47. Blackburn's failed to comply with its duties under HIPAA despite being aware of the risks associated with unauthorized access to Plaintiff's and Class Members' PHI.

**Blackburn's Violated FTC Guidelines**

48. The Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, prohibited Blackburn's from engaging in "unfair or deceptive acts or practices in or affecting commerce."

The Federal Trade Commission ("FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' PII is an "unfair practice" in violation of the FTC Act. *See, e.g., Fed. Trade Comm'n v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

49. The FTC has promulgated several guides for businesses that reflect the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.[23]

50. In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established data security guidelines for businesses.[24] The guidelines reflect that businesses should protect the PII that they keep; properly dispose of PII that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.

51. The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to confidential data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.[25]

---

[23] Federal Trade Commission, Start With Security: A Guide for Business (available at https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf) (last visited Aug. 5, 2026).

[24] Federal Trade Commission, Protecting Personal Information: A Guide for Business (available at https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf) (last visited Aug. 5, 2026).

[25] FTC, Start With Security, *supra*.

52. The FTC has brought enforcement actions against businesses for failing to protect customer data adequately and reasonably, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

53. Blackburn's failed to properly implement basic data security practices. Blackburn's failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiff's and Class Members' PII and PHI constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

54. Blackburn's was at all times fully aware of its obligation to protect Plaintiff's and Class Members' PII and PHI because of its position as a healthcare provider. Blackburn's was also aware of the significant repercussions that would result from its failure to do so.

**Plaintiff's Experience**

55. Plaintiff Anthony Mazzarini is currently a Blackburn's customer.

56. Blackburn's obtained Mr. Mazzarini's PII and PHI in the course of conducting its regular business operations.

57. At the time of the Data Breach, Blackburn's retained Mr. Mazzarini's PII and PHI.

58. Mr. Mazzarini has recently received more spam telephone calls than he previously did.

59. Mr. Mazzarini greatly values his privacy and is very careful about sharing his sensitive PII and PHI. Mr. Mazzarini diligently protects his PII and PHI, takes proactive steps to

ensure that his PII and PHI are kept safe and secure, and stores any documents containing his PII and PHI in a safe and secure location. He has never knowingly transmitted unencrypted sensitive PII or PHI over the internet or any other unsecured source.

60. Blackburn's obtained and continues to maintain Mr. Mazzarini's PII and PHI and has a continuing legal duty and obligation to protect that PII and PHI from unauthorized access and disclosure.

61. The Data Breach has caused Mr. Mazzarini to suffer imminent and impending injury arising from the substantially increased risk of additional future fraud, identity theft, and misuse resulting from his PII and PHI being placed in the hands of criminals.

62. As a result of the Data Breach, Mr. Mazzarini is at present risk and will continue to be at increased risk of identity theft and fraud for years to come.

63. Mr. Mazzarini has a continuing interest in ensuring that his PII and PHI, which, upon information and belief, remain backed up in Blackburn's possession, are protected and safeguarded from future breaches.

## CLASS ACTION ALLEGATIONS

64. Plaintiff brings this action on behalf of himself and on behalf of all other persons similarly situated pursuant to Fed. R. Civ. P. 23(a) and (b).

65. Plaintiff proposes the following Class definition, subject to amendment as appropriate:

> All United States citizens whose PII and/or PHI was compromised as a result of the Data Breach disclosed by Blackburn's on or around March 17, 2025 (the "Nationwide Class").

66. Excluded from the Class are Blackburn's officers and directors, and any entity in which Blackburn's has a controlling interest; and the affiliates, legal representatives, attorneys,

successors, heirs, and assigns of Blackburn's. Excluded also from the Class are Members of the judiciary to whom this case is assigned, their families and Members of their staff.

67. Plaintiff reserves the right to amend or modify the class definitions with greater specificity or division after having had an opportunity to conduct discovery. The proposed Class meets the criteria for certification as set forth below.

68. Numerosity. The Members of the Class are so numerous that joinder of all of them is impracticable. Upon information and belief, the class includes at least thousands of individuals.

69. Commonality. There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

a. Whether Blackburn's unlawfully used, maintained, lost, or disclosed Plaintiff's and Class Members' Private Information;

b. Whether Blackburn's failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

c. Whether Blackburn's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

d. Whether Blackburn's data security systems prior to and during the Data Breach were consistent with industry standards;

e. Whether Blackburn's owed a duty to Class Members to safeguard their PII and PHI;

f. Whether Blackburn's breached its duty to Class Members to safeguard their PII and PHI;

g. Whether computer hackers obtained Class Members' PII and PHI in the Data Breach;

h. Whether Blackburn's knew or should have known that its data security systems and monitoring processes were deficient;

i. Whether Plaintiff and Class Members suffered legally cognizable damages as a result of Blackburn's misconduct;

j. Whether Blackburn's conduct was negligent;

k. Whether Blackburn's conduct was *per se* negligent;

l. Whether Blackburn's was unjustly enriched;

m. Whether Blackburn's failed to provide notice of the Data Breach in a timely manner; and

n. Whether Plaintiff and Class Members are entitled to damages, civil penalties, punitive damages, and/or injunctive relief.

70. Typicality. Plaintiff's claims are typical of those of other Class Members because Plaintiff's PII and PHI, like that of every other Class member, was compromised in the Data Breach.

71. Adequacy of Representation. Plaintiff will fairly and adequately represent and protect the interests of the Members of the Class. Plaintiff's Counsel is competent and experienced in litigating class actions, including data privacy litigation of this kind.

72. Predominance. Blackburn's has engaged in a common course of conduct toward Plaintiff and Class Members, in that all the Plaintiff's and Class Members' data was stored on the same computer systems and unlawfully accessed in the same way. The common issues arising from Blackburn's conduct affecting Class Members set out above predominate over any

individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

73. Superiority. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Blackburn's. In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

74. Blackburn's has acted on grounds that apply generally to the Class as a whole, so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a class-wide basis.

75. Likewise, particular issues are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

a. Whether Blackburn's failed to timely notify the public of the Data Breach;
b. Whether Blackburn's owed a legal duty to Plaintiff and the Class to exercise due care in collecting, storing, and safeguarding their Private Information;
c. Whether Blackburn's security measures to protect their data systems were reasonable in light of best practices recommended by data security experts;

d. Whether Blackburn's failure to institute adequate protective security measures amounted to negligence;

e. Whether Blackburn's failed to take commercially reasonable steps to safeguard consumer Private Information; and

f. Whether adherence to FTC data security recommendations, and measures recommended by data security experts would have reasonably prevented the Data Breach.

76. Finally, all members of the proposed Class are readily ascertainable. Blackburn's has access to Class Members' names and addresses affected by the Data Breach. In fact, Class Members have already been preliminarily identified and sent notice of the Data Breach by Blackburn's.

## CAUSES OF ACTION

### First Count
### Negligence
### (On Behalf of Plaintiff and the Class)

77. Plaintiff re-alleges and incorporates the above allegations as if fully set forth herein.

78. Blackburn's required Plaintiff and Class Members to submit non-public personal information in order to obtain healthcare/medical services.

79. By collecting and storing this data in Blackburn's computer facilities, and sharing it and using it for commercial gain, Blackburn's had a duty of care to use reasonable means to secure and safeguard those facilities — and Class Members' PII and PHI held within them — to prevent disclosure of the information, and to safeguard the information from theft. Blackburn's duty included a responsibility to implement processes by which it could detect a breach of its

security systems in a reasonably expeditious period of time and to give prompt notice to those affected in the case of a Data Breach.

80. Blackburn's owed a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that its systems and networks, and the personnel responsible for them, adequately protected the PII and PHI.

81. Blackburn's duty of care to use reasonable security measures arose as a result of the special relationship that existed between Blackburn's and its members, employees, and employees' relatives, which is recognized by laws and regulations including but not limited to HIPAA, as well as common law. Blackburn's was in a position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Class Members from a data breach.

82. Blackburn's duty to use reasonable security measures under HIPAA required Blackburn's to "reasonably protect" confidential data from "any intentional or unintentional use or disclosure" and to "have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information." 45 C.F.R. § 164.530(c)(1). Some or all of the healthcare, medical, and/or medical information at issue in this case constitutes "protected health information" within the meaning of HIPAA.

83. In addition, Blackburn's had a duty to employ reasonable security measures under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

84. Blackburn's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Blackburn's is bound by industry standards to protect confidential PII and PHI.

85. Blackburn's breached its duties, and thus was negligent, by failing to use reasonable measures to protect Class Members' PII and PHI. The specific negligent acts and omissions committed by Blackburn's include, but are not limited to, the following:

a. Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' PII and PHI;

b. Failing to adequately monitor the security of its networks and systems;

c. Failure to periodically ensure that its email system had plans in place to maintain reasonable data security safeguards;

d. Allowing unauthorized access to Class Members' PII and PHI;

e. Failing to detect in a timely manner that Class Members' PII and PHI had been compromised; and

f. Failing to timely notify Class Members about the Data Breach so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

86. It was foreseeable that Blackburn's failure to use reasonable measures to protect Class Members' PII and PHI would result in injury to Class Members. Further, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches involving health information.

87. It was therefore foreseeable that the failure to adequately safeguard Class Members' Private Information would result in one or more types of injuries to Class Members.

88. Plaintiff and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

89. Blackburn's negligent conduct is ongoing, in that it still holds the PII and PHI of Plaintiff and Class Members in an unsafe and unsecure manner.

90. Plaintiff and Class Members are also entitled to injunctive relief requiring Blackburn's to (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) continue to provide adequate credit monitoring to all Class Members.

**Second Count**
**Breach of Implied Contract**
**(On Behalf of Plaintiff and the Class)**

91. Plaintiff re-alleges the above allegations as if fully set forth herein.

92. When Plaintiff and Class Members provided their PII and PHI to Blackburn's in exchange for Blackburn's services, they entered into implied contracts with Blackburn's pursuant to which Blackburn's agreed to reasonably protect such information.

93. Blackburn's solicited, offered, and invited Class Members to provide their PII and PHI as part of Blackburn's regular business practices. Plaintiff and Class Members accepted Blackburn's offers and provided their PII and PHI to Blackburn's.

94. In entering into such implied contracts, Plaintiff and Class Members reasonably believed and expected that Blackburn's data security practices complied with relevant laws and regulations, including HIPAA, and were consistent with industry standards.

95. Plaintiff and Class Members paid money to Blackburn's with the reasonable belief and expectation that Blackburn's would use part of its earnings to obtain adequate data security. Blackburn's failed to do so.

96. Plaintiff and Class Members would not have entrusted their PII and PHI to Blackburn's in the absence of the implied contract between them and Blackburn's to keep their information reasonably secure.

97. Plaintiff and Class Members would not have entrusted their PII and PHI to Blackburn's in the absence of its implied promise to monitor its computer systems and networks to ensure that it had adopted reasonable data security measures.

98. Plaintiff and Class Members fully and adequately performed their obligations under their implied contracts with Blackburn's.

99. Blackburn's breached its implied contracts with Class Members by failing to safeguard and protect their PII and PHI.

100. As a direct and proximate result of Blackburn's breach of the implied contracts, Class Members sustained damages as alleged herein, including the loss of the benefit of the bargain.

101. Plaintiff and Class Members are entitled to compensatory, consequential, and nominal damages suffered as a result of the Data Breach.

102. Plaintiff and Class Members are also entitled to injunctive relief requiring Blackburn's to, among other things (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate credit monitoring to all Class Members.

**<u>Third Count</u>**
**Breach of Fiduciary Duty**
**(On Behalf of Plaintiff and the Class)**

103. Plaintiff re-alleges the above allegations as if fully set forth herein.

104. In light of the confidential relationship between Blackburn's and Plaintiff and Class Members, whereby Blackburn's became guardian of Plaintiff's and Class Members' PII and PHI, Blackburn's became a fiduciary by its undertaking and guardianship of the PII and PHI, to act primarily for Plaintiff and Class Members, (1) for the safeguarding of Plaintiff's' and Class Members' PII and PHI; (2) to timely notify Plaintiff and Class Members of a Data Breach and disclosure; and (3) to maintain complete and accurate records of what information (and where) Blackburn's stored and stores.

105. Blackburn's has a fiduciary duty to act for the benefit of Plaintiff and Class Members upon matters within the scope of Blackburn's relationship with Plaintiff and Class Members, in particular, to keep their PII and PHI secure.

106. Blackburn's fiduciary duties to Plaintiff and Class Members were non-delegable.

107. Blackburn's breached its fiduciary duties to Plaintiff and Class Members by failing to diligently discover, investigate, and give notice of the Data Breach in a reasonable and practicable period of time.

108. Blackburn's breached its fiduciary duties to Plaintiff and Class Members by failing to encrypt and otherwise protect the integrity of the systems containing Plaintiff's and Class Members' PII and PHI.

109. Blackburn's breached its fiduciary duties owed to Plaintiff and Class Members by failing to timely notify and/or warn Plaintiff and Class Members of the Data Breach.

110. Blackburn's breached its fiduciary duties to Plaintiff and Class Members by otherwise failing to safeguard Plaintiff's and Class Members' PII and PHI.

111. As a direct and proximate result of Blackburn's breaches of its fiduciary duties, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i)

actual identity theft; (ii) the compromise, publication, and/or theft of their PII and PHI; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft and/or unauthorized use of their PII and PHI; (iv) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (v) the continued risk to their PII and PHI, which remains in Blackburn's possession and is subject to further unauthorized disclosures so long as Blackburn's fails to undertake appropriate and adequate measures to protect the PII and PHI in its continued possession; (vi) future costs in terms of time, effort, and money that will be expended as result of the Data Breach for the remainder of the lives of Plaintiff and Class Members; and (vii) the diminished value of Blackburn's services they received.

112. As a direct and proximate result of Blackburn's breach of its fiduciary duties, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm, and other economic and non-economic losses.

**Fourth Count**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class)**

113. Plaintiff re-alleges the above allegations as if fully set forth herein. Plaintiff brings this claim individually and on behalf of all Class Members. This count is pled in the alternative to the breach of implied contract count above.

114. Upon information and belief, Blackburn's funds its data security measures entirely from its general revenue, including payments made by or on behalf of Plaintiff and the Class Members.

115. As such, a portion of the payments made by or on behalf of Plaintiff and the Class Members is to be used to provide a reasonable level of data security, and the amount of the portion of each payment made that is allocated to data security is known to Blackburn's.

116. Plaintiff and Class Members conferred a monetary benefit on Blackburn's. Specifically, they purchased goods and services from Blackburn's and/or its agents and in so doing provided Blackburn's with their PII and PHI. In exchange, Plaintiff and Class Members should have received from Blackburn's the goods and services that were the subject of the transaction and had their PII and PHI protected with adequate data security.

117. Blackburn's knew that Plaintiff and Class Members conferred a benefit which Blackburn's accepted. Blackburn's profited from these transactions and used the PII and PHI of Plaintiff and Class Members for business purposes.

118. In particular, Blackburn's enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiff's and Class Members' PII and PHI. Instead of providing a reasonable level of security that would have prevented the hacking incident, Blackburn's instead chose to increase its own profits at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Blackburn's decision to prioritize its own profits over the requisite data security.

119. Under the principles of equity and good conscience, Blackburn's should not be permitted to retain the money belonging to Plaintiff and Class Members, because Blackburn's failed to implement appropriate data management and security measures that are mandated by industry standards.

120. Blackburn's failed to secure Plaintiff and Class Members' PII and PHI and, therefore, did not provide full compensation for the benefit Plaintiff and Class Members provided.

121. Blackburn's acquired the PII and PHI through inequitable means in that it failed to disclose the inadequate security practices previously alleged.

122. If Plaintiff and Class Members knew that Blackburn's had not reasonably secured their PII and PHI, they would not have agreed to provide their PII and PHI to Blackburn's.

123. Plaintiff and Class Members have no adequate remedy at law.

124. As a direct and proximate result of Blackburn's conduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (a) actual identity theft; (b) the loss of the opportunity to determine how their PII and PHI are used; (c) the compromise, publication, and/or theft of their PII and PHI; (d) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their PII and PHI; (e) lost opportunity costs associated with efforts expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (f) the continued risk to their PII and PHI, which remains in Blackburn's possession and is subject to further unauthorized disclosures so long as Blackburn's fails to undertake appropriate and adequate measures to protect PII and PHI in its continued possession; and (g) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the disclosure of their PII and PHI resulting from the Data Breach for the remainder of the lives of Plaintiff and Class Members.

125. As a direct and proximate result of Blackburn's conduct, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm.

126. Blackburn's should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that it unjustly received from them. In the alternative, Blackburn's should be compelled to refund the amounts that Plaintiff and Class Members overpaid for Blackburn's services.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

a) For an Order certifying this action as a class action and appointing Plaintiff and his counsel to represent the Class;

b) For equitable relief enjoining Blackburn's from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff and Class Members' PII and PHI, and from refusing to issue prompt, complete and accurate disclosures to Plaintiff and Class Members;

c) For equitable relief compelling Blackburn's to utilize appropriate methods and policies with respect to consumer data collection, storage, and safety, and to disclose with specificity the type of PII and PHI compromised during the Data Breach;

d) For equitable relief requiring restitution and disgorgement of the revenues wrongfully retained as a result of Blackburn's wrongful conduct;

e) Ordering Blackburn's to pay for not less than ten years of credit monitoring services for Plaintiff and the Class;

f) For an award of actual damages, compensatory damages, statutory damages, and statutory penalties, in an amount to be determined, as allowable by law;

g) For an award of punitive damages, as allowable by law;

h) For an award of attorneys' fees and costs, and any other expense, including expert witness fees;

i) Pre- and post-judgment interest on any amounts awarded; and

j) Such other and further relief as this court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury on all claims so triable.

Dated: August 6, 2026

Respectfully submitted,

*/s/ Timothy C. Leckenby*

Timothy C. Leckenby (PA ID 332707)
**BAILEY & GLASSER LLP**
180 Swinderman Road
Suite 450
Wexford, PA 15090
(412) 430-0391
tleckenby@baileyglasser.com

Bart D. Cohen (PA Bar No. 57606)
Panida Anderson (*pro hac vice* forthcoming)
**BAILEY GLASSER LLP**
1055 Thomas Jefferson Street NW, Suite 540
Washington, DC 20007
(202) 463-2101
bcohen@baileyglasser.com
panderson@baileyglasser.com

*Counsel for Plaintiff and the Proposed Class*